**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

DAVID M. NAJAR,

     Plaintiff,

vs.                                                    Civ. No. 09-148 JP/ACT

JOE WILLIAMS, Secretary of the Department
of Corrections, Individually and in his official capacity,
STANLEY MOYA, Warden of the Penitentiary of New Mexico,
as part of the Department of Corrections, Individually and in
his official capacity; TAMMY ARCHULETA, Coordinator of
the Security Threat Investigative Unit of the Department of
Corrections, Individually and in her official capacity; LAWRENCE
JARAMILLO, Administrator of the Security Threat Investigative
Unit and Deputy Warden of the Department of Corrections, Individually
and in his official capacity, and the STATE OF NEW MEXICO, acting
through its DEPARTMENT OF CORRECTIONS, an agency of the
State of New Mexico,

     Defendants.

## MEMORANDUM OPINION AND ORDER OF PARTIAL DISMISSAL AND PARTIAL REMAND

On November 5, 2009, Defendants Joe Williams, Stanley Moya, Tammy

Archuleta, Lawrence Jaramillo, and the State of New Mexico, acting through its

Department of Corrections (collectively "State Defendants"), filed The State Defendants'

Motion for Qualified and Sovereign Immunity and to Stay Proceedings (Doc. No. 33)[1]

and The State Defendants' Partial Motion to Dismiss and Supporting Memorandum

---

[1] On November 6, 2009, the Honorable Alan C. Torgerson, United States
Magistrate Judge, issued a Memorandum Opinion and Order (Doc. No. 36) granting the
State Defendants' request to stay discovery pending the resolution of their Motions to
Dismiss.  Therefore, only the portions of the State Defendants' motion requesting
qualified and sovereign immunity remains unresolved.

(Doc. No. 34). Both motions are made under Fed. R. Civ. P. 12 (b)(6) and will be considered together as State Defendants' "Motions to Dismiss." Then, on December 7, 2009, Plaintiff David Najar filed Plaintiff's Response to the State Defendants' Motion to Dismiss and Supporting Memorandum (Doc. No. 44) and Plaintiff's Response to the State Defendants' Motion for Qualified and Sovereign Immunity and To Stay Proceedings (Doc. No. 46). Finally, on December 21, 2009, the State Defendants filed The State Defendants' Reply in Support of Motion to Dismiss (Doc. No. 48) and The State Defendants' Reply in Support of Motion to Dismiss (Doc. No. 49). Having considered the parties' briefs and the applicable law, the Court finds that the State Defendants' Motions to Dismiss should be granted.

## MOTION TO DISMISS STANDARD

Fed. R. Evid. 12 (b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." In ruling on a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded allegations as true and views them in the light most favorable to the plaintiff. *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009). Rule 12(b)(6) requires that the complaint set forth the grounds of plaintiff's entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While the complaint does not need to include detailed factual allegations, "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* In other words, dismissal of a complaint under Rule 12(b)(6) is proper only where it is obvious that the plaintiff failed to set forth "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

2

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. ____, 129 S. Ct. 1937, 1949 (2009)(citations omitted).

## BACKGROUND

On February 24, 2007, while Plaintiff David Najar was incarcerated at the New Mexico State Penitentiary in Santa Fe, New Mexico ("NMSP"), two unidentified inmates beat Najar with a two foot long pipe in the prison's recreation yard.  (First Amended Compl. ¶ 17, Doc. No. 28.)  According to Najar, the beating occurred after a third unidentified inmate distracted the correctional officer monitoring the recreation yard, causing the guard to leave the recreation yard, while the two other inmates beat Najar with a pipe that they had obtained from nearby weight equipment.  (*Id.*)  Najar maintains that correctional officers were not able to intervene timely to interrupt the attack because the door providing the most direct access to the recreation yard was locked and could not be opened since the responding officers did not have the corresponding key.  (*Id.*)  As a result of that beating, Najar claims that he suffered brain trauma, broken bones throughout his body, a partially severed ear, and bruising.  (*Id.* ¶ 18) Additionally, Najar alleges that he lost sight in one eye, lost hearing in his right ear, and lost the use of his right hand.  (*Id.*)

At the time of this incident, each of the individually named State Defendants occupied supervisory positions either at the NMSP or within the New Mexico Department of Corrections ("DOC").  (*Id.* ¶ 9.)  Specifically, Defendant Joe Williams

3

was, and still is, the Secretary of the DOC, and in that capacity was responsible for supervising all officers and employees of the DOC and for establishing and implementing DOC policies.  (*Id.* ¶ 11.)  Defendant Stanley Moya was, and still is, the warden of the NMSP, and in that capacity was responsible for the general operation of the NMSP and for the supervision of its officers and employees.  (*Id.* ¶ 12.)  According to Najar, Defendants Tammy Archuleta and Lawrence Jaramillo were the coordinator and administrator respectively of the Security Threat Investigative Unit, which was responsible for determining the gang affiliation of all inmates and for investigating complaints from inmates regarding perceived threats to their safety.  (*Id.* ¶¶ 13-14.) Najar claims that he was one of the inmates on whose behalf the Security Threat Investigative Unit was conducting an investigation, but Najar does not specifically contend that either Archuleta or Jaramillo were the investigating officers.  (*Id.*) Likewise, Najar does not allege that any of the individually named Defendants were present in the recreation yard either before or during the attack, nor does Najar allege that any of the individually named Defendants were the correctional officers who allegedly responded to the attack untimely.  Instead, Najar asserts his claims against the individually named Defendants in their supervisory capacities.

## DISCUSSION

In their Motions to Dismiss, The State Defendants move under Fed. R. Civ. P. 12 (b)(6) to dismiss Najar's claims asserting: (1) that the individually named Defendants are entitled to qualified immunity, (2) that Najar's claims against the DOC and the individual Defendants in their official capacities are barred by sovereign immunity, and (3) that Najar has failed to state a cognizable claim under the Eighth Amendment.  The Court will address each argument separately.

4

## I.   The State Defendants' Motion to Dismiss Individual Capacity Claims Based on Qualified Immunity

The individual State Defendants move to dismiss individual capacity claims based on qualified immunity with respect to Najar's federal constitutional claims, arguing that Najar has failed to allege facts sufficient to state a violation of his constitutional rights.  Specifically, the individual State Defendants argue that "[n]one of the allegations against the individual defendants affirmatively link them to the purported constitutional violation.  (Doc. No. 33 at 3.)  Likewise, the individual State Defendants contend that Najar "does not set forth any specific allegations establishing that the individually named defendants were in any way personally involved in the constitutional violation."  (Doc. No. 33 at 5.)

Najar devotes a significant portion of his response to reciting *verbatim* the allegations in his First Amended Complaint (Doc. No. 28) and to articulating the general legal standards governing qualified immunity and claims under the Eighth Amendment. To the extent Najar advances legal arguments in response to the individual State Defendants' motion, Najar initially refers the Court to the discussion in his Response to the State Defendants' Motion to Dismiss (Doc. No. 44) of the individual State Defendants' subordinates' alleged violation of Najar's constitutional rights. Additionally, in the limited legal argument he presents in response to the individual State Defendants' motion for qualified immunity, Najar contends that:

> [t]he individual defendants do have personal involvement as alleged in the Complaint in that they are responsible for establishing, implementing, and executing policy, practice, and customs of the Department of Corrections, or responsible for the management of the personnel at the Department of Corrections[,] or for operating the prison and supervising all officers and employees of the prison[,] or responsible for investigating gang member affiliation of inmates.

5

(Doc. No. 46 at 10-11.)  Najar thus asserts that he "has properly put Defendants on notice of the claims being made against them."  (*Id.* at 11.)  Additionally, Najar requests that he "be allowed to amend [his] complaint in order to set forth with [sic] more specific allegations, should the Court deem such are necessary."  (*Id.*)

### A.    The Law Governing Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, ___ U.S. ___, 129 S.Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (internal quotation marks omitted). "Qualified immunity balances two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 129 S.Ct. at 815.  With respect to the latter interest, the United States Supreme Court has emphasized that qualified immunity is "an immunity from suit rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) and has "repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation" to avoid subjecting government officials to the costs and burdens of litigation unnecessarily, *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

The analysis of a government official's entitlement to qualified immunity follows a two-step approach.  In the context of a motion to dismiss under Fed. R. Civ. P. 12 (b)(6), the court "must first decide whether the facts [the] plaintiff has alleged . . . make out a violation of a constitutional right." *Pearson*, 129 S. Ct. at 815-16.  "[I]f the plaintiff

6

has satisfied this first step, the court must [then] decide whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Id.* at 816 (internal citation and quotation marks omitted). Under the approach recently articulated in *Pearson*, the Court may exercise its discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818.

**B.    The Law Governing Supervisory Liability**

Because Najar asserts his claims against each of the individual State Defendants in their supervisory capacities, the law governing supervisory liability under 42 U.S.C. § 1983 will guide the Court's analysis of whether Najar has stated a claim upon which relief can be granted. It is well settled that claims of federal constitutional violations under § 1983 may not be based on a theory of respondeat superior. *Monell v. Dep't of Soc. Svcs.*, 436 U.S. 658 (1978); *see also Serna v. Colo. Dep't of Corrs.*, 455 F.3d 1146, 1151 (10th Cir. 2006)(noting that "[t]here is no concept of strict supervisor liability under § 1983.")(citation omitted). However, "[t]his does not mean that a supervisor may not be liable for the injuries caused by the conduct of one of his subordinates. It does mean that his liability is not vicarious, that is, without fault on his part." *Serna*, 455 F.3d at 1151 (citation omitted). The Tenth Circuit has thus articulated the standard for supervisory liability under § 1983 as follows:

> Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights. To establish supervisor liability under § 1983, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation. Instead, ... the plaintiff must establish 'a deliberate, intentional act by the supervisor to violate constitutional rights.'" Jenkins, 81 F.3d at 994-95 (quoting *Woodward v. City of*

*Worland*, 977 F.2d 1392, 1399 (10th Cir. 1992)). In short, the supervisor must be personally "involved in the constitutional violation," and a "sufficient causal connection" must exist between the supervisor and the constitutional violation. *Rios v. City of Del Rio*, 444 F.3d 417, 425 (5th Cir. 2006).

In order to establish a § 1983 claim against a supervisor for the unconstitutional acts of his subordinates, a plaintiff must first show the supervisor's subordinates violated the constitution. Then, a plaintiff must show an "affirmative link" between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates. *Holland v. Harrington*, 268 F.3d 1179, 1187 (10th Cir. 2001); *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997). In this context, the supervisor's state of mind is a critical bridge between the conduct of a subordinate and his own behavior. Because "mere negligence" is not enough to hold a supervisor liable under § 1983, a plaintiff must establish that the supervisor acted knowingly or with "deliberate indifference" that a constitutional violation would occur.

*Serna*, 455 F.3d at 1151-52.

### C.    Whether the Individual State Defendants are Entitled to Qualified Immunity

Turning now to the merits of the individual State Defendants' motion for qualified immunity, the Court will first address whether Najar has alleged sufficient facts to state a plausible claim to relief on a theory of supervisory liability.  Initially, the Court notes that Najar's amended complaint contains surprisingly little information about the alleged acts of the individual State Defendants' subordinates.  Indeed, the only reference to conduct of the individual State Defendants' subordinates appears in the section of Najar's First Amended Complaint entitled "Factual Allegations Common to All Causes of Action," which alleges that:

One inmate distracted the guard that monitors the recreation yard, and the guard actually left the recreation yard, providing the opportunity for the other two inmates to savagely assault and batter the Plaintiff to unconsciousness.  Other guards could not render assistance in a timely manner because the door providing more direct access was locked (and they did not have the key) and could not be opened.

(First Amended Compl. at 6.)  Hence, the only ostensible allegations against the individual State Defendants' subordinates is an unspecified claim against the unidentified correctional officer who allegedly left the recreation yard before the attack and a separate claim against the unidentified correctional officers who responded to the attack for allegedly failing to render assistance timely to Najar after the attack.

Strikingly absent from these vague allegations is any assertion that the unnamed subordinate corrections officers acted intentionally or deliberately to deprive Najar of his constitutional rights.[2]  At most, the allegations relating to those officers state a claim for negligence, which is not cognizable under § 1983.  *Jones v. Salt Lake County*, 503 F.3d 1147, 1162-63 (10th Cir. 2007)(citing *Jojola v. Chavez*, 55 F.3d 488, 490 (10th Cir. 1995)(holding that "[l]iability under § 1983 must be predicated upon a deliberate deprivation of constitutional rights by the defendant, and not on negligence.")).  Therefore, Najar's complaint fails to state any viable underlying constitutional violation for which the individual State Defendants could be held liable in their supervisory capacities.  Hence, Najar has failed to state a violation of his constitutional rights by the individual State Defendants, and the Court therefore finds that each of those Defendants is entitled to qualified immunity.

Likewise, the Court notes that even if Najar had stated a viable underlying constitutional violation that could form the basis for the individual State Defendants' alleged supervisory liability, Najar's claim would still fail because the entire basis for his

---

[2] The Court's analysis of the actions of the subordinate corrections officers is somewhat complicated by Najar's election not to name those officers as defendants, which the Court surmises is the reason for Najar's failure to develop any meaningful factual allegations with respect to those officers.

supervisory liability claim is the alleged negligence of the individual State Defendants. Specifically, in the preface to his specific allegations of wrongdoing by the individual State Defendants, Najar contends that the individual State Defendants "breach[ed] [] their duty of care to Plaintiff Najar by *negligently*" performing their supervisory duties. (First Amended Compl. ¶ 22) (emphasis added).  That prefatory language combined with the language of the substantive allegations of wrongdoing conclusively demonstrates Najar's intent to hold the individual State Defendants liable under a theory of negligence.  (*See id.*)  Najar's reiteration of the alleged wrongdoing in his response to the individual State Defendants' motion for qualified immunity underscores the complete absence of any allegation of deliberate or intentional conduct by the individual State Defendants. (*See* Doc. No. 46 at 11.)  Indeed, all of this language supports the individual State Defendants' assertion that Najar has failed to plead a cognizable constitutional claim against them.  As "mere negligence is not enough to hold a supervisor liable under § 1983," *Serna*, 455 F.3d at 1152, Najar has failed to allege facts sufficient to state a violation of his constitutional rights.[3]  Because Najar has failed to allege facts sufficient to "make out a violation of a constitutional right," *Pearson*, 129 S. Ct. at 815-16, the Court need not reach the issue of whether the individual State Defendants' alleged conduct violated clearly established law.  Accordingly, the individual State Defendants are entitled to qualified immunity on Najar's federal constitutional claims against them, and Najar's federal constitutional claims should be dismissed on that basis.

---

[3] The Court notes that Najar's argument that the allegations in his Amended Complaint "properly put Defendants on notice of the claims being made against them" (First Amended Compl. at 11) misses the mark.  The Court's central inquiry in deciding a motion to dismiss under Fed. R. Civ. P. 12 (b)(6) is whether the plaintiff has "state[d] a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, not whether the complaint sufficiently apprises the defendants of the claims against them.

### D.    Najar's Request to Amend

As mentioned in Part I *supra*, Najar requests leave to amend his amended complaint "in order to set forth with [sic] more specific allegations, should the Court deem such are necessary."  (Doc. No. 46 at 11.)  Najar's request in this regard is rather unorthodox.  Essentially, Najar conditionally requests leave to amend his complaint in the event the Court finds that dismissal of his claims is appropriate.   Najar does not cite any authority suggesting that such an amendment would be appropriate, nor does he advance any legal argument regarding the appropriateness or necessity of amendment at this point in the litigation other than attempting to defeat the State Defendants' Motions to Dismiss.

Because Najar has already amended his complaint once as a matter of course under Fed. R. Civ. P. 15 (a)(1), his current request to amend falls within the ambit of Fed. R. Civ. P. 15 (a)(2).  Under Rule 15 (a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave."  While Rule 15 (a)(2) instructs that "[t]he court should freely give leave when justice so requires," the Court may nevertheless exercise its discretion to deny a request to amend "upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009)(quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)).

Initially, the Court notes that Najar has failed to articulate why the interests of justice would require allowing him leave to amend his amended complaint, and Najar's apparent desire to avoid dismissal of his federal constitutional claims is wholly

insufficient.  Furthermore, the Court finds that Najar could have cured the glaring deficiencies in the pleading of his federal constitutional claims through the amendment already permitted.  Remarkably, in his amended complaint, Najar articulated almost *verbatim* the same facts and allegations pertaining to his federal constitutional claims as he advanced in his original complaint.  (*Compare* Compl. at 5-7, Doc. No. 1, *with* Amended Compl. at 5-8.)  To the extent Najar expanded on the factual allegations from his original complaint, the additional information presented did not change the substantive basis of his legal claims against the individual State Defendants — negligence.  Indeed, Najar merely added additional allegations of purportedly negligent conduct, described his alleged injuries in greater detail, and provided minimal additional details about the circumstances preceding his attack and his attackers. (*Compare* Compl. at 5-7 *with* Amended Compl. at 5-8.) None of this information, however, tends to support a plausible claim to relief for alleged violation of Najar's constitutional rights.  As discussed in Part I.B *supra*, the law regarding supervisory liability is well-settled, meaning that Najar had ample notice of the essential elements of that claim before filing both his original complaint and his amended complaint.  Najar's election to proceed on a legally erroneous theory of liability despite an opportunity to amend his complaint to plead a theory of liability that comports with the governing law is not a sufficient reason now to permit Najar to amend his complaint again in an attempt to avoid dismissal of his claims.  The Court thus finds that Najar's request for leave to amend his amended complaint should be denied.

**II.     The State Defendants' Motion to Dismiss Official Capacity Claims Based on Sovereign Immunity**

Next, the DOC and each of the individual State Defendants in their official capacities move to dismiss Najar's claims, asserting that they are entitled to sovereign immunity.   Najar does not respond to the State Defendants' motion in this regard. Although under D.N.M.LR-Civ. 7.1 (b) "[t]he failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion," the Court will nevertheless address the merits of this issue in accordance with the spirit of Fed. R. Civ. P. 12 (b)(6).   *See Issa v. Comp USA*, 354 F.3d 1174, 1177-78 (10th Cir. 2003)(noting that the purpose of motions under Rule 12 (b)(6) is "to test the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true.")(internal citation and quotation marks omitted).

Under the Eleventh Amendment to the United States Constitution, "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  As the Tenth Circuit has explained,

> It is well established that under the Eleventh Amendment, sovereign immunity prohibits federal courts from entertaining suits against states brought by their own citizens or citizens of another state without their consent. *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304, 110 S. Ct. 1868, 109 L. Ed. 2d 264 (1990). This rule extends to state agencies functioning as an arm of the state. *Mt. Healthy City School Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 280, 97 S. Ct. 568, 50 L.Ed.2d 471 (1977). The Eleventh Amendment is not without exceptions, however, as pursuant to its powers under Section Five of the Fourteenth Amendment, Congress may enact a statute abrogating a state's Eleventh Amendment immunity if

13

the text of the statute explicitly manifests a desire to do so. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S. Ct. 2666, 49 L. Ed. 2d 614 (1976). A state may also waive its Eleventh Amendment immunity through a clear expression of its intent to waive. *Edelman v. Jordan*, 415 U.S. 651, 673, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974). But Congress did not abrogate Eleventh Amendment immunity through Section 1983 . . ..

*Hunt v. Colo. Dep't of Corrs.*, 271 Fed. Appx. 778, 780-81 (10th Cir. 2008).

Najar acknowledges in his First Amended Complaint that the DOC is an agency of the State of New Mexico (First Amended Compl. ¶ 10), but he nonetheless proceeds with claims against the DOC presumably under the misguided theory that the State has waived its sovereign immunity under the New Mexico Tort Claims Act, NMSA 1978 § 41-4-1 through -29.  However, NMSA 1978 § 41-4-1 (F) expressly states that "[n]othing in . . . this section shall be construed as a waiver of the . . . state's immunity from suit in federal court under the eleventh amendment to the United States constitution."  Thus, because the State has not waived its Eleventh Amendment sovereign immunity, and because the DOC, as an agency of the State, is entitled to that same immunity, Najar's claims against the DOC should be dismissed.

Likewise, although "state officials literally are persons[,] . . . a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)(citation omitted). Thus, because "§ 1983 applies only to persons and, when sued solely for money damages, as in this case, neither a State nor its officials acting in their official capacities are persons under § 1983," *Jackson v. N.M. Public Defender's Office*, 2010 WL 227569, *4 (10th Cir. Jan. 22, 2010)(unpublished), Najar's claims against the individual State Defendants in their official capacities should be dismissed.

III.    **The State Defendants' Motion to Dismiss Najar's Eighth Amendment Claims**

Finally, the State Defendants move under Fed. R. Civ. P. 12 (b)(6) to dismiss Najar's Eighth Amendment claims, which allege that the State Defendants failed to protect Najar from the attack and failed to provide appropriate medical care to Najar following the attack.  The Court will address each claim separately.[4]

A.    **The State Defendants' Motion to Dismiss Najar's Claim for Failure to Protect**

With respect to Najar's failure to protect claim, the State Defendants argue that Najar has failed to state a cognizable claim in that regard because he "merely asserts [] conclusory allegations that the State Defendants breached their duty of care to him by allowing other prisoners access to weapons, by failing to properly screen and segregate violent prisoners, by failing to sufficiently staff the prison, by failing to follow safety procedures, by failing to provide adequate security, by failing to classify prisoners, and by failing to protect Plaintiff specifically."  (Doc. No. 34 at 5.)  Furthermore, the State Defendants note that Najar does not assert claims against any specific individual State Defendant or allege facts that suggest personal participation by any individual State Defendant.  Accordingly, the State Defendants argue, Najar's allegations fail to rise to the level required by *Farmer v. Brennan*, 511 U.S. 825 (1976) to state a violation of his constitutional rights.

---

[4] Although the Court has already found that the State Defendants are entitled to qualified immunity on Najar's individual capacity claims against them and that sovereign immunity bars Najar's official capacity claims, the Court will nevertheless address the merits of the State Defendants' separately filed Partial Motion to Dismiss (Doc. No. 34).

15

The limited legal argument Najar presents in response is largely conclusory and merely repeats the allegations in his First Amended Complaint in the context of the governing legal standards.  Specifically, Najar claims that:

> The weight machine posed a risk in that it was disassembled and a 2' pipe was used as a weapon.  The guard who left his post did not receive proper training.  The guard who left his post followed improper policies, procedures, and customs implemented by the prison.  The guard who left his post ignored the risk imposed to Plaintiff.  The guard who left his post ignored the propensity for violence of the assaulting inmates and the other inmates housed with Plaintiff.  The prison officials had a custom, policy, or practice of locking doors that provided direct access to the recreation yard.  Additional guards were unable to render timely assistance due to the customs, policies, and procedures of the prison.  The prison officials had a custom, policy, or practice of not providing keys to lock [sic] doors which would allow the additional guards direct access to the yard.  Plaintiff's injuries became more severe as a result of failure of the additional guards to have immediate access to the recreational yard.

(Doc. No. 44 at 14.)  Thus, according to Najar, he has alleged sufficient facts to establish a plausible claim that conditions existed at the NMSP posing a substantial risk of serious harm. Furthermore, Najar contends that the State Defendants' failure "to implement proper safety measures, including the []proper classification of Plaintiff, as well as []proper policies, procedures, rules, regulations, training, supervision, hiring, and having [sic] sufficient staff" demonstrates deliberate indifference for which the State Defendants may be held liable under the Eighth Amendment. (*Id.* at 16.)  Accordingly, Najar maintains that he has alleged sufficient facts to state a plausible claim to relief.

### 1.    Law Governing Claims Under the Eighth Amendment for Failure to Protect

It is well settled that "prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners."  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)(alteration in original, citation omitted).  The United States Supreme Court has

recognized that "[b]eing violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 834 (internal quotation marks and citation omitted). However, "[i]t is not . . . every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* Indeed, "[t]o establish a cognizable Eighth Amendment claim for failure to protect, the plaintiff must show that he is incarcerated under conditions posing a substantial risk of serious harm[,] the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component." *Verdencia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003)(internal quotation marks and citation omitted).

The United States Supreme Court has made clear that "deliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. As such, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment," that would give rise to liability under the Eighth Amendment *Id.* at 838. Instead, "[t]he subjective component of the deliberate indifference test requires that, before liability can be imposed, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Verdencia*, 327 F.3d at 1175 (internal quotation marks and citation omitted).

## 2.    Najar's Claim for Failure to Protect

Turning now to the merits of Najar's failure to protect claim, the Court must first assess whether Najar has alleged sufficient facts to suggest that he was incarcerated

under conditions posing a substantial risk of serious harm.   Accepting as true the well-pleaded allegations of Najar's First Amended Complaint as the Court must in deciding a motion to dismiss under Fed. R. Civ. P. 12 (b)(6), and disregarding the numerous conclusory legal allegations Najar offers, the Court will consider the following conditions in assessing the objective component of Najar's claim:

> 1) The recreational yard at the NMSP contained weight lifting equipment that was accessible to inmates and that was able to be disassembled (First Amended Compl. ¶ 17);

> 2) The NMSP housed Najar with inmates convicted of violent offenses, including first and second degree murder (*Id.*);

> 3) The NMSP posted only one correctional officer to supervise the recreational yard (*See id.*)

> 4) The correctional officer responsible for supervising the recreational yard at the time of Najar's attack left his post before Najar's attack in response to a distraction from another inmate (*Id.*);

> 5) The door providing the most direct access to the recreational yard was locked in accordance with NMSP policy and the responding correctional officers did not have the key to unlock the door, which impeded the officers' ability to access Najar immediately following his attack (*Id.*);

Considering these conditions as a whole, the Court finds that Najar has alleged sufficient facts, although tenuously at best, to satisfy the objective component of his failure to protect claim because the facts as Najar alleges them evince a dangerous combination of minimal staffing, violent offenders, and ready access to potential weapons.

Having found that Najar has alleged sufficient facts to satisfy the objective component of his failure to protect claim, the Court will now address the subjective component of that claim, *i.e.* whether Najar has alleged sufficient facts to establish a plausible claim that the State Defendants were deliberately indifferent to Najar's safety.

As discussed in Part I.C *supra*, Najar has not alleged any direct wrongdoing by any of the individual State Defendants such as witnessing and failing to intervene in Najar's attack.  Instead, the sole basis for Najar's claim is the purported negligence of the individual State Defendants in their operation of the NMSP, specifically in their staffing, inmate classification, and safety policies.  (First Amended Compl. ¶ 22.)  Najar does not allege any pattern of violent assaults in the recreational yard or in the unit of the NMSP to which Najar was assigned, any previous use of the weight equipment by inmates to assault one another, any ongoing issues related to the staffing of correctional officers in the recreational yard, any prior altercations between Najar and the inmates who attacked him, or any circumstances suggesting an increased risk of a violent assault in the recreational yard.  In other words, Najar essentially contends that the State Defendants failed to exercise ordinary care to prevent Najar's attack in light of the conditions described in the Court's analysis of the subjective component of his claim.  However, as *Farmer* expressly dictates, mere negligence, though certainly not desirable or commendable, is insufficient to establish the level of culpability required to state a cognizable claim for failure to protect under the Eighth Amendment.  Therefore, because Najar's First Amended Complaint is devoid of any factual allegations suggesting deliberate indifference Najar's safety by any of the individual State Defendants, his failure to protect claim should be dismissed.

**B.    The State Defendants' Motion to Dismiss Najar's Claim for Inadequate Medical Care**

With respect to Najar's claim for inadequate medical care, the State Defendants contend that Najar's First Amended Complaint is "devoid of specific allegations that

19

Defendants ignored [Najar's] injuries or failed to provide adequate medical care, either negligently or intentionally.  In fact, there are no allegations that provide any detail as to the nature of care received."  (Doc. No. 34 at 3.)  Therefore, the individual State Defendants maintain that Najar's allegations fail to establish a plausible claim to relief under the Eighth Amendment.

In response, Najar once again quotes extensively from his First Amended Complaint while advancing almost no argument regarding the legal implications of his allegations.  To the extent the Court can discern any legal argument in this portion of Najar's response, it appears that Najar contends the seriousness of his injuries stemming from the attack demonstrate the State Defendants' deliberate indifference to his medical needs, though Najar does not clarify why this is allegedly so.  Then, in conclusory fashion, Najar argues that he has satisfied his burden under *Twombly,* 550 U.S. 544, of pleading a facially plausible claim to relief.

### 1.    Law Governing Claims Under the Eighth Amendment for Inadequate Medical Care

"The states have a constitutional duty to provide necessary medical care to their inmates . . .." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996).  The failure to provide such care may constitute a violation of the inmate's rights under the Eighth Amendment if the inmate shows that prison officials were deliberately indifferent to the inmate's "serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  "The test for deliberate indifference is both objective and subjective." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).

20

With respect to the objective component, "[t]he prisoner must first produce objective evidence that the deprivation at issue was in fact sufficiently serious. . . . [A] medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)(internal citations and quotation marks omitted).  However, "a delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm." *Id.* (internal citation and quotation marks omitted).

Next, as the Tenth Circuit has explained, "[t]o prevail on the subjective component, the prisoner must show that the defendants knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it.  A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Martinez*, 563 F.3d at 1089.

### 2.    Najar's Claim for Inadequate Medical Care

Initially, the Court notes that, as the State Defendants have observed, Najar's First Amended Complaint contains surprisingly little information regarding his claim for inadequate medical care.  Indeed, the entirety of his allegation includes a description of the injuries he sustained from the attack, a statement regarding a purported delay in the unnamed correctional officers' ability to access him due to the locked door leading

21

into the recreational yard, and a conclusory legal allegation that the State Defendants failed to provide Najar "timely and proper medical care and rehabilitation." (First Amended Compl. ¶¶ 17-18, 22.) As discussed below, these allegations fall well short of stating a plausible claim to relief.

With respect to the objective component of Najar's claim, accepting as true the nature of Najar's injuries as he has described them, there is no question that those injuries constituted a serious medical need. Those injuries alone though are not sufficient to satisfy the objective component of Najar's claim given the nature of his allegations. *See Mata*, 427 F.3d at 751 (requiring plaintiff to establish that alleged delay in medical care resulted in substantial harm). Najar has alleged that following the attack, "guards could not render assistance in a timely manner because the door providing more direct access was locked (and they did not have the key) and could not be opened." (*Id.* ¶ 17.) However, Najar does not describe either the length of the delay or how that delay resulted in substantial harm to him. Accordingly, Najar has failed to allege sufficient facts to establish plausibly the objective component of his claim, and his claim for inadequate medical care should be dismissed.

The Court notes, however, that even if Najar had alleged sufficient facts to establish the objective component, his claim for inadequate medical care would still be subject to dismissal because he has not alleged any facts to suggest that any of the individual State Defendants or their subordinates were deliberately indifferent to Najar's medical needs. To the contrary, the allegations in Najar's First Amended Complaint establish that Najar received stitches and underwent at least one surgical procedure to reattach the severed portion of his right ear, and suggest that Najar

22

received x-rays and other diagnostic medical services to identify the location and number of fractures he sustained and the severity of his head trauma.  (*See* First Amended Compl. ¶ 18.)  Hence, rather than suggesting inadequate care, the allegations in Najar's First Amended Complaint indicate that the State Defendants procured ample medical services to diagnose and treat Najar's numerous injuries.  As such, nothing in Najar's First Amended Complaint suggests that the individual State Defendants or their subordinates were deliberately indifferent to any of Najar's medical needs.  Therefore, Najar's First Amended Complaint fails to state even conceivably, much less plausibly, deliberate indifference by the individual State Defendants, and thus Najar's inadequate medical care claim should be dismissed.

## CONCLUSION

Najar has failed to articulate a plausible entitlement to relief against the individual State Defendants, and his claims against the DOC and the individual State Defendants in their official capacities are barred by sovereign immunity.

**IT IS THEREFORE ORDERED THAT:**

1)    The State Defendants' Motion for Qualified and Sovereign Immunity and to Stay Proceedings (Doc. No. 33) is GRANTED.

2)    The State Defendants' Partial Motion to Dismiss and Supporting Memorandum (Doc. No. 34) is GRANTED.

3)    Plaintiff David Najar's federal constitutional claims against the State Defendants are dismissed with prejudice.

Furthermore, having granted the State Defendants' Motions to Dismiss, the Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over Najar's remaining state law claims.

**IT IS THEREFORE ORDERED THAT** Najar's remaining claims under state law are remanded to the First Judicial District Court, Santa Fe County, State of New Mexico.

_____
SENIOR UNITED STATES DISTRICT JUDGE